IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GALE GUNDERSON,                                    08-CV-183-BR

        Plaintiff,                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR  97045
(503) 632-1120

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1053

 1 - OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2212

       Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Gale Gunderson seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.

      This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision.


## ADMINISTRATIVE HISTORY

      Plaintiff filed his most recent application for DIB on April 2, 2003, and his most recent application for SSI on February 24, 2003.[1]  In both applications, Plaintiff alleges an

---

[1] Plaintiff also filed applications for DIB and SSI in 1998, which were denied initially and on reconsideration.  His request for hearing on the 1998 application was dismissed in April 2000.

onset date of October 1, 2000.  Tr. 298-99, 323, 592.[2]  The

applications were denied initially and on reconsideration.

Tr. 302, 307, 596-97, 602-03.  An Administrative Law Judge (ALJ)

held a hearing on August 10, 2005, which was continued to

March 16, 2006, for the purpose of obtaining additional medical

evidence.  At both hearings, Plaintiff was represented by an

attorney and testified.  A vocational expert (VE) testified at

the March 16, 2006, hearing.

The ALJ issued an opinion on July 26, 2006, in which she

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 22-30.  That decision became the final decision

of the Commissioner on December 8, 2007, when the Appeals Council

denied Plaintiff's request for review.  Tr. 11.


### BACKGROUND

Plaintiff was 52 years old at the time of the March 16,

2006, hearing.  Tr. 657.  He has an associate degree in nursing

science.  Tr. 657.  Plaintiff previously worked as a production

manager and laundry worker.  Tr. 340.

Except when noted below, Plaintiff does not challenge the

ALJ's summary of the medical evidence.  After reviewing the

medical records, this Court adopts the ALJ's summary of the

---

[2] Citations to the official transcript of record filed by
the Commissioner on June 30, 2008, are referred to as "Tr."

medical evidence.  *See* Tr. 25-29.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence means more than a mere scintilla, but less than a preponderance, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility,

resolving conflicts in the medical evidence, and resolving
ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Robbins,*
466 F.3d at 882. The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005). The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknow-ledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining

whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in any

7 - OPINION AND ORDER

substantial gainful activity since his alleged onset date.
Tr. 25.

At Step Two, the ALJ found Plaintiff has the severe
impairments of hepatitis, back pain related to a 1999 lumbar
decompression surgery, and anxiety.  Tr. 25.  The ALJ also noted
Plaintiff exhibited signs of alcoholism and drug-seeking
behavior.  Tr. 25.

At Step Three, the ALJ found Plaintiff does not have an
impairment or a combination of impairments that meets or equals a
Listing.  The ALJ assessed Plaintiff's RFC and found he can
perform medium exertion work, but he cannot work at dangerous
heights, climb ladders, or operate commercial vehicles.  Tr. 27.

At Step Four, the ALJ found Plaintiff is not able to perform
his past relevant work as a production manager or laundry worker.
Tr. 28.

At Step Five, the ALJ found Plaintiff is able to perform
jobs that exist in significant numbers in the national economy.
Tr. 29.  The ALJ identified three examples of such work based on
the testimony of the VE:  storage-rental clerk, small-products
assembler, and hand packager.  Tr. 29.  Thus, the ALJ concluded
Plaintiff is not disabled and, therefore, is not entitled to
benefits.

**DISCUSSION**

Plaintiff contends the ALJ erred when she (1) rejected the opinion of William Trueblood, Ph.D., that was part of the record for Plaintiff's 1998 claims for DIB and SSI; (2) rejected Plaintiff's testimony as to his fatigue symptoms; (3) did not include any limitations in Plaintiff's RFC based on his severe impairments of hepatitis and anxiety; and (4) did not apply SSR 85-15 when she assessed Plaintiff's RFC.

**I.   Dr. Trueblood's opinion.**

Plaintiff contends the ALJ erred when she rejected Dr. Trueblood's opinion that was part of the record for Plaintiff's 1998 claims for DIB and SSI.

On December 30, 1998, Dr. Trueblood, an examining physician, conducted a psychological evaluation of Plaintiff at the request of DDS.[3]  Although Dr. Trueblood found Plaintiff's intellectual skills, including his learning and memory skills, were at an average level overall, Dr. Trueblood stated Plaintiff had likely experienced a decline in his cognitive abilities.  Tr. 236. Dr. Trueblood also noted some weakness in Plaintiff's visual construction and nonverbal problem-solving.  Tr. 236. Dr. Trueblood concluded these weaknesses would affect Plaintiff's

---

[3] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

performance in areas of employment that required those skills,
but Dr. Trueblood found those weaknesses would not significantly
affect Plaintiff's ability to work in other jobs.  Tr. 237.
Dr. Trueblood also stated Plaintiff's anxiety disorder would
cause Plaintiff distress in any job that involved substantial
interpersonal contact.  Tr. 237.  Dr. Trueblood's opinion,
however, arose from his examination of Plaintiff in conjunction
with Plaintiff's DIB and SSI claims that were initially denied in
July 1999 and dismissed in April 2000.

    "Medical opinions that predate the alleged onset of
disability are of limited relevance."  *Carmickle v. Comm'r*,
533 F.3d 1155, 1165 (9th Cir. 2008)(citing *Fair v. Bowen*,
885 F.2d 597, 600 (9th Cir. 1989)).  *See also Burkhart v. Bowen*,
856 F.2d 1335, 1340 n.1 (9th Cir. 1988)(medical opinion is not
probative when it predates onset date); *Frustaglia v. Sec'y of
H.H.S.*, 829 F.2d 192, 193 (10th Cir. 1987)(ALJ entitled to
consider evidence from a prior denial only for limited purpose of
reviewing preliminary facts or cumulative medical history).
Thus, because Dr. Trueblood's opinion predates Plaintiff's
alleged onset date, it is of limited relevance to Plaintiff's
current claims.  Accordingly, it was proper for the ALJ to
consider Dr. Trueblood's opinion solely for the purpose of
providing factual background.  Tr. 23.  Plaintiff, however,

contends in light of the ALJ's consideration of Dr. Trueblood's opinion as medical background, the ALJ should have developed the record as to Plaintiff's mental impairments by ordering a second psychiatric evaluation.

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)(internal quotations omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288).

At the August 10, 2005, hearing the ALJ specifically stated she was incorporating Dr. Trueblood's evaluation into the record for the purpose of providing medical background, but she was not reopening the prior application.  Tr. 684.  Nevertheless, Plaintiff's counsel requested the ALJ to order a psychiatric evaluation.  Tr. 685.  The ALJ, however, declined to do so. Tr. 685.  The ALJ specifically found a second psychiatric evaluation would not be necessary or useful to properly evaluate Plaintiff's mental impairments.  Tr. 685-86.  In support of the ALJ's finding, the record does not suggest an ambiguity exists as to Plaintiff's mental impairments and, therefore, does not

indicate further development of the record was required. Although the ALJ noted Plaintiff exhibited signs of alcoholism and drug-seeking behavior and found Plaintiff's anxiety is a severe impairment, the record does not reflect Plaintiff received significant treatment for or exhibited significant symptoms of these mental impairments during the relevant period nor that Plaintiff appears to have any limitations based on his mental impairments.  In addition, the ALJ properly found Plaintiff's testimony as to his symptoms and his limitations was not entirely credible as set out below.

On this record, the Court concludes the ALJ did not err when she considered Dr. Trueblood's opinion for the limited purpose of determining Plaintiff's medical background and did not find it necessary to order a second psychiatric evaluation.

## II.  Plaintiff's testimony.

Even though Plaintiff specifically stated he does not contest the ALJ's credibility determination, Plaintiff contends the ALJ erred when she disregarded Plaintiff's allegations of fatigue.  The Court construes Plaintiff's argument as a contention that the ALJ improperly rejected Plaintiff's testimony regarding his fatigue symptoms.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir.
1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.
1991).  The claimant, however, need not produce objective medical
evidence of the actual symptoms or their severity.  *Smolen*,
80 F.3d at 1284.

     If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra*, 481 F.3d 742, 750
(9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834
(9th Cir. 1995)).  The ALJ must identify "what testimony is not
credible and what evidence undermines the claimant's complaints."
*Id*. (quoting *Lester*, 81 F.3d at 834).  General assertions that
the claimant's testimony is not credible are insufficient.  *Id*.

     In an Activities of Daily Living Report dated December 10,
2002, Plaintiff stated he becomes fatigued easily.  Tr. 354.  On
February 19, 2003, Plaintiff completed a Claimant Fatigue
Questionnaire in which he stated he first experienced symptoms of
fatigue in 1998.  Tr. 386.  He reported he rests during and
between activities and cannot finish tasks.  Tr. 386-87.

Plaintiff also reported he can only stand or walk for two hours before he has to rest, can sit for three hours before he has to rest, can bend occasionally, can lift twenty pounds occasionally, and can reach frequently.  Tr. 388.

At the August 10, 2005, hearing, Plaintiff testified he is "essentially sick all the time" because of chronic and profound fatigue, and his constant fatigue limits him from doing activities such as walking, sitting, or performing household chores.  Tr. 673.

The ALJ did not find Plaintiff was malingering. Accordingly, she is required to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.  *Parra*, 481 F.3d at 750.  When weighing a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)(internal quotation omitted). *See also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999)(inconsistent statements regarding substance abuse constitute a legally sufficient reason for finding a claimant's testimony not credible).

The ALJ concluded Plaintiff's testimony was not entirely

credible because, among other things, he exhibits drug-seeking behavior and presents inconsistent statements to his medical providers in order to obtain medication.  The record supports the ALJ's conclusions.  For example, on January 21, 2002, Plaintiff told Thomas White, a physician's assistant, that he had not been using Valium for a year when, in fact, Plaintiff had just obtained a prescription from Adriana Kori, M.D., on January 16, 2002.  Tr. 505, 519.  On September 4, 2002, Plaintiff reported to Dr. Morrow that he had been trying to stockpile his Valium by obtaining it from two pharmacies.  Tr. 496.  Plaintiff requested a prescription for narcotics, but Dr. Morrow refused because of Plaintiff's drug-seeking behavior.  Tr. 497.  On September 16, 2002, Dr. Kori noted Plaintiff had attempted to refill his diazepam prescription at two different pharmacies.  Tr. 513.  In addition, Dr. Kori reported Plaintiff stated that he had used up all of the Valium prescribed by Dr. Morrow when, in fact, he had just filled the prescription.  Tr. 513.  On June 29, 2004, W. Scott Spence, M.D., declined Plaintiff's request for a Valium prescription after being notified by the pharmacy that Plaintiff had already obtained a prescription from Richard Kollar, M.D., on June 21, 2004.  Tr. 558.

On this record, the Court concludes the ALJ did not err when she found Plaintiff's testimony was not entirely credible because

the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### III. Limitations in Plaintiff's RFC based on his severe impairments.

Plaintiff contends the ALJ erred when she found Plaintiff had the severe impairments of anxiety and hepatitis but did not include any limitations in Plaintiff's RFC based on those impairments.

"The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements of step five." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). *See also Keokham v. Astrue*, No. 07-CV-426, WL 4196972, at *4-*5 (E.D. Cal. Sept. 9, 2008)(the ALJ's severity finding at Step Two was not inconsistent with mild limitations included in the ALJ's assessment of Plaintiff's RFC). Thus, an ALJ's finding at Step Two that an impairment is severe does not necessarily require the ALJ to include in her assessment of Plaintiff's RFC any limitations that could result from that impairment. *Id*.

The ALJ found Plaintiff's anxiety and hepatitis met the *de minimus* requirement for severity at Step Two. In her assessment of Plaintiff's RFC, the ALJ limited Plaintiff to medium exertion work based on Plaintiff's back pain, but the ALJ did not include

any limitations based on Plaintiff's anxiety or hepatitis.  As
noted, under *Hoopai* the ALJ was not required to include those
limitations at Step Five merely because she had concluded
Plaintiff's anxiety and hepatitis were sufficiently severe to
meet the *de minimus* requirement at Step Two.

Accordingly, the Court concludes on this record that the ALJ
did not err when she did not include any limitations in her
evaluation of Plaintiff's RFC based on Plaintiff's anxiety and
hepatitis.

**IV.  Consideration of SSR 85-15.**

Plaintiff contends the ALJ was required to consider
Plaintiff's reactions to work-related stress pursuant to
SSR 85-15 when the ALJ assessed Plaintiff's RFC.

SSR 85-15 "supplements regulations providing the manner in
which the Secretary will evaluate disability claims when the
claimant suffers only 'nonexertional' impairments." *Roberts v.
Shalala*, 66 F.3d 179, 183 (9th Cir. 1995).  SSR 85-15 "has no
application to [a claimant] who claims both exertional and
nonexertional impairments." *Id*.  Nonexertional impairments
include, among other things, the ability to reach, seize, hold,
and grasp as well as environmental and mental impairments.
SSR 85-15 at *2.

Here Plaintiff asserted he suffered from the exertional
impairment of back pain as well as nonexertional mental

impairments.  Tr. 167, 403.  SSR 85-15, therefore, does not apply to Plaintiff.  *See Roberts*, 66 F.3d at 183.

Accordingly, the Court concludes on this record that the ALJ did not err when she did not consider Plaintiff's reactions to work-related stress pursuant to SSR 85-15 when she assessed Plaintiff's RFC.


## <u>CONCLUSION</u>

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 7th day of April, 2009.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER